# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**KAMLESH B. AGRAWAL,**
**D.O.C. # C05100,**

    Petitioner,

vs.                                 Case No. 4:21cv346-WS-MAF

**ALEJANDRO MAYORKAS, et al.,**

    Respondents.

_____/

## ORDER and AMENDED REPORT AND RECOMMENDATION

Petitioner, proceeding pro se, filed an "urgent petition for writ of habeas corpus and/or prohibition" on August 17, 2021, ECF No. 1, and simultaneously paid the filing fee. ECF No. 4. After review of the petition, ECF No. 1, and the appendix of exhibits, ECF No. 2, submitted in support of the petition, a Report and Recommendation was entered on August 18, 2021, ECF No. 5. Petitioner was given additional time in which to file objections to the Report and Recommendation, ECF Nos. 6-7, and his objections were filed on September 13, 2021. ECF No. 8.

Petitioner's objections, ECF No. 8, seek to clarify the claims raised in the initial petition. In light thereof, Petitioner's objections, ECF No. 8, are construed as a motion for reconsideration and is granted. The petition has been reviewed once again in light of the explanation provided in Plaintiff's motion for reconsideration, ECF No. 8. This Amended Report and Recommendation supercedes the original Report and Recommendation.

**The Petition**

Petitioner stated in the petition that he was seeking a writ of habeas corpus to do two things: (1) "direct the Respondent(s) to cancel the immigration detainer" and (2) prohibit Respondents "from detaining Petitioner after he completes his Florida prison sentence." ECF No. 1 at 1. Petitioner advised that he had requested that I.C.E. [Immigration and Customs Enforcement] locate his passport, cancel the removal order, and allow him to "voluntarily return to his native India." *Id.* at 4. At the time the petition was filed, Petitioner had not yet received a response to his request, *id.,* or to several subsequent letters. *Id.* at 5. Petitioner said he had submitted multiple letters requesting that the immigration detainer[1] be

---

[1] "An immigration detainer 'serves to advise another law enforcement agency that the Department [of Homeland Security ('DHS') ] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien' and 'is a

Page 3 of 16

canceled and that he be provided with his passport so he could depart the United States voluntarily. *Id.* Petitioner claimed that detaining him for purposes of removal after he completes his prison sentence violates Article 17 of the Extradition Treaty between the United States and India. *Id.* at 6.

Within the petition, Petitioner reiterated his request for relief: "to cancel the Immigration Detainer" and to "prohibit them from detaining petitioner for a period of at least fifteen (15) days after he completes his Florida prison sentence and is set free." ECF No. 1 at 6. At the end of the petition, Petitioner requested issuance of a "writ of habeas corpus and/or prohibition and/or other appropriate writ" and asked the Court to: (1) cancel the detainer; (2) direct I.C.E. not to "detain Petitioner for a period of at least fifteen (15) days after he completes his Florida sentence and is set free;" (3) cancel the removal order; (4) direct I.C.E. to return Petitioner's passport to him; and (5) any other relief the Court saw fit to grant. *Id.* at 9. As stated, it seemed the petition was clear - Petitioner sought cancellation of

---

request that such agency advise the [DHS], prior to release of the alien, in order for the [DHS] to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.'" 8 C.F.R. § 287.7(a) (quoted in <u>Themeus v. U.S. Dep't of Justice</u>, No. 15-13240, 2016 WL 537397, at *3 (11th Cir. Feb. 11, 2016)).

both the detainer and the removal order, and permission to voluntarily depart the United States.

**The Motion for Reconsideration**

Petitioner now contends that the original Report and Recommendation demonstrates that his petition was "misconstrued." ECF No. 8 at 2. He states that he is not requesting "voluntary departure under 8 U.S.C. § 1229c," and says he is not challenging "the removal order" or any "discretionary" relief. Id. Rather, Petitioner contends he is requesting that "the U.S. Government comply with the Treaty under which it brought the Petitioner into the country." Id. Because that issue "is not directly part of the removal order itself," Petitioner contends that "this Court has subject matter jurisdiction to decide the issue." Id. (citing to Madu v. U.S. Atty. Gen., 470 F.3d 1362, 1363 (11th Cir. 2006)).[2]

Petitioner points out that his letters to I.C.E. requested that they comply with Article 17 of the Treaty. Id. He also contends that he "has not sought stay of the removal order" and is not attempting to "stay/live in the

---

[2] Madu v. U.S. Atty. Gen., 470 F.3d 1362, 1363 (11th Cir. 2006), is not on point. That case held that a petitioner's claim that he was not subject to an order of removal was distinct from a petitioner's challenge to a removal order for the purposes of the REAL ID Act. Thus, the district court had jurisdiction to consider petitioner's claims since he was arguing there was no lawful removal order at all.

United States." *Id.* at 3. Rather, he argues that I.C.E. can put him on an airplane to return him to India the same day he is released from the Department of Corrections, but if that is not possible, he contends that his detention is not authorized and he "must be set free for a period of at least 15 days" pursuant to the Treaty. *Id.* at 3-4.

**Background Facts**

Petitioner is a citizen of India who entered the United States on a student visa (F-1 visa) in January of 1997. ECF No. 1 at 2. Petitioner fled the United States on July 12, 1999, after committing a murder on July 11, 1999.[3] *Id.* at 3. Petitioner was extradited from India to the United States in July 2008. *Id.* He entered a plea, was convicted of second degree murder, and is currently "serving his Florida prison sentence in Florida Department of Corrections (FDC) at Liberty Correctional Institution, [in] Bristol, Florida." *Id.* Petitioner expects to complete his sentence on October 20, 2021.[4] *Id.*

---

[3] Petitioner stated in the petition that he was charged "with the crime of murder allegedly committed on July 11, 1999." ECF No. 1 at 2. Despite that contention, Petitioner acknowledged that he entered into a plea agreement and was "convicted of Second Degree Murder and sentenced to" 25 years incarceration. *Id.* at 3. Having apparently pled guilty to the charge, Petitioner's assertion of "allegedly" committing the crime is not well taken.

[4] At the time the Report and Recommendation was issued, the "Corrections Offender Network" on the D.O.C. website indicated Petitioner's anticipated release date was November 9, 2021. Petitioner said that release date did not take into account the

Petitioner states that an immigration detainer was submitted to the FDC in January 2011. ECF No. 1 at 3; *see also* ECF No. 2 at 8. Thereafter, Petitioner indicates that he received a "Notice and Order of Expedited Removal" which was dated April 20, 2011. ECF No. 1 at 3. A copy of the Order of Removal was filed as an exhibit to the petition. *See* ECF No. 2 at 9. The Order of Removal was served on Petitioner on September 16, 2011. *Id.* Petitioner is not in possession of a passport as it was seized by Immigration officials when he was extradited and entered the United States on July 10, 2008, to face the pending criminal charges. ECF No. 1 at 4.

**Analysis**

This petition has been filed pursuant to 28 U.S.C. § 2241, which requires a petitioner to be "in custody under or by color of the authority of the United States . . . ." 28 U.S.C.A. § 2241(c)(1). ECF No. 1 at 2. Petitioner is currently in the physical custody of the Florida Department of Corrections. "[A]bsent custody by the authority against whom relief is sought, jurisdiction will not lie to grant the writ." Gonzales-Corrales v.

---

gain time he expects to earn during August and September 2021. ECF No. 8 at 3, n.1. At this time, the website currently shows a release date of October 20, 2021.

I.C.E., 522 F. App'x 619, 623 (11th Cir. 2013) (citing Orozco v. U.S.I.N.S., 911 F.2d 539, 541 (11th Cir. 1990)).  The Eleventh Circuit has held that "[t]he filing of the detainer, standing alone, did not cause [petitioner] to come within the custody of the INS."  Orozco, 911 F.2d at 541 (11th Cir. 1990); *see also* Roberts v. INS, 372 F. App'x 921, 924 (11th Cir. 2010).

In this case, Petitioner will be deemed to be in the custody of I.C.E. because an Order of Removal has also been entered; thus, this is not a "detainer standing alone" situation.  *See* Caballero v. Dep't of Homeland Sec., No. 5:12cv197-MMP-EMT, 2012 WL 6756248, at *1 (N.D. Fla. Nov. 30, 2012), report and recommendation adopted, No. 5:12cv197-MP-EMT, 2013 WL 26139 (N.D. Fla. Jan. 2, 2013) (noting that no Eleventh Circuit decision on this issue had been entered but citing to other jurisdictions which held that issuance of an order of removal satisfied the "in custody" requirement);[5] *see also* Themeus v. Immigr. & Customs Enf't, No.

---

[5] Cases cited include Simmonds v. I.N.S., 326 F.3d 351, 354 (2d Cir. 2003) (alien in state prison challenging final removal order was in "constructive custody" for purpose of allowing habeas review of subsequent immigration detention), and Garcia–Echaverria v. U.S., 376 F.3d 507, 511 (6th Cir. 2004) (federal prisoner was in I.N.S. custody when he filed habeas petition challenging constitutionality of confinement, where final order of removal was in place); and Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir. 2001) (even though alien habeas petitioners were not being "detained," they were "in custody" for habeas purposes because they were subject to final deportation orders), and Galaviz–Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) (I.N.S. detainer plus final order of deportation rendered alien "in custody" of I.N.S. for purposes of habeas review,

5:15cv39-MW-EMT, 2015 WL 3952708, at *4 (N.D. Fla. June 29, 2015), *aff'd sub nom.* Themeus v. U.S. Dep't of Just., 643 F. App'x 830 (11th Cir. 2016) (concluding "that the ICE detainer coupled with the final removal order render[ed] Petitioner in the custody of ICE for purposes of § 2241(c), despite the fact that he is not in ICE's physical custody").

First, although Petitioner contends he is not requesting "voluntary departure under 8 U.S.C. § 1229c," he has provided no other basis for such a departure. The Court has not independently located another provision of immigration law that permits an alien to voluntarily depart the United States. Moreover, although the petition did not specifically request that he be permitted to voluntarily return to India, that was the relief he requested from I.C.E., *see* ECF No. 1 at 4, and it would seem that the only way to permit an alien's voluntary departure is to cancel the detainer and removal orders. These requests for relief are intermingled.

Second, as clarified by Petitioner's motion for reconsideration, he is challenging his future anticipated detention by immigration officials on the basis that any such detention would violate the Treaty between India and the United States. Although it is not a direct challenge to a removal order,

---

where alien challenged final deportation order). Caballero, 2012 WL 6756248, at *1.

Case No. 4:21cv346-WS-MAF

Petitioner's request for relief is necessarily intertwined with his request to cancel the detainer and allow him to walk freely out of prison without being placed in immigration detention. ECF No. 1 at 1.

It is unclear whether Petitioner's request for relief is premature. Petitioner admittedly is unaware of whether I.C.E. officials have granted his request for permission to voluntarily depart from the United States. Second, it does not appear that Petitioner will be able to depart the United States within 15 days of his release from prison because he acknowledges that he does not have a passport in his possession. Third, Petitioner has not demonstrated that he has the ability to purchase an airplane ticket to India. In the wake of the global pandemic, there have been only limited flights to India and bans on international travel, not including the cost of such travel where it is possible. The voluntary departure statute provides, in relevant part, that "The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense." 28 U.S.C. § 1229c(a)(1). Petitioner has not shown that he is financially able to do so, or that the Attorney General has granted his request.

Nevertheless, Petitioner claims the Treaty does not permit his detention "for any reason other than the offense for which he was

Case No. 4:21cv346-WS-MAF

extradited." ECF No. 1 at 7. Article 17 of the treaty, the "Rule of Speciality," states:

> 1.  [A] person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:
>
> (a) the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser included offense;
>
> (b) an offense committed after the extradition of the person; or
>
> (c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment. for the purpose of this subparagraph:
>
>> (i) the Requested State may require the submission of the documents called for in Article 9; and
>>
>> (ii) the person extradited may be detained by the Requesting State for 90 days, or for such longer period of time as the Requested State may authorize, while the request is being processed.
>
> 2.  [A] person extradited under this Treaty may not be extradited to a third State for an offense committed prior to his surrender unless the surrendering State consents.
>
> 3.  Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:
>
> (a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

>(b) that person does not leave the territory of the Requesting State within 15 days of the day on which that person is free to leave.

1997 WL 602447, Extradition Treaty Between the Gov't of the United States of Am. & the Gov't of the Republic of India, Signed at Washington on June 25, 1997, S. Treaty Doc. No. 105-30 (June 25, 1997).

Ruling on this § 2241 petition requires deciding whether the civil detention of Petitioner for purposes of removal violates paragraph 3(b) of Article 17 of the Treaty. Doing so involves resolving a question of law as to whether Petitioner "is free to leave," among others. However, such a question must be presented in the appropriate court of appeals 8 U.S.C. § 1252(a)(2)(D). That statute provides: "Nothing in subparagraph (B) or (C),[6] or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D); see Guo Xing Song v. U.S. Atty. Gen., 516 F. App'x 894, 896 (11th Cir. 2013). Because this Court does not have

---

[6] Subparagraph (B) precludes judicial review of discretionary decisions and subparagraph (C) precludes judicial review of orders entered against criminal aliens.

Case No. 4:21cv346-WS-MAF

authority to consider Petitioner's claim that his civil detention will violate the Treaty between India and the United States, he must pursue any relief available in the Eleventh Circuit Court of Appeals.

This Court lacks subject matter jurisdiction over this petition for another reason as well.  The Eleventh Circuit has recently explained that "[t]he Immigration and Nationality Act gives the Attorney General discretion to permit aliens to voluntarily leave the country at their own expense." Blanc v. United States Att'y Gen., 996 F.3d 1274, 1278 (11th Cir. 2021) (citing 8 U.S.C. § 1229c(a)(1)).[7]  Courts lack "jurisdiction to review discretionary denials of relief in immigration proceedings, including the denial of voluntary departure."  8 U.S.C. § 1252(a)(2)(B) (cited in Blanc, 996 F.3d at 1278).

As stated three times within the petition, Petitioner's request for relief is to cancel the immigration detainer and set him "free" so that he can voluntarily depart the United States.  ECF No. 1 at 9.  Yet approval for voluntary departure must be granted by the Attorney General and is a "discretionary form of relief."  Blanc, 996 F.3d at 1278.  The statute is clear

---

[7] Notably, no other statutory provision was cited which enables an alien to voluntarily leave the United States besides § 1229c(a)(1).

Case No. 4:21cv346-WS-MAF

that "no court" has jurisdiction to review a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B); see Blanc, 996 F.3d at 1278. The law is clear in holding that whether to permit an alien to voluntarily depart the United States is discretionary, whether made prior to a removal order, 8 U.S.C. § 1229c(a)(1), or "at the conclusion of a proceeding under section 12291 of this title . . . ." 8 U.S.C. § 1229c(b)(1). See Dada v. Mukasey, 554 U.S. 1, 8, 128 S. Ct. 2307, 2312, 171 L. Ed. 2d 178 (2008) (stating "[v]oluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly"). Accordingly, because jurisdiction does not exist to review a discretionary decision concerning Petitioner's request for voluntary departure, if such a decision has even been made, this case should be dismissed.[8]

---

[8] As noted above, even though an appellate court could not "review any judgment relating to a request for voluntary departure," that court could consider "constitutional or legal claims." Blanc, 996 F.3d at 1279 (citing Patel v. U.S. Att'y Gen., 971 F.3d 1258,

Case No. 4:21cv346-WS-MAF

Moreover, beyond lacking jurisdiction to consider "discretionary" decisions in general, the statutory framework is also more specific: "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b), nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure."  8 U.S.C. § 1229c(f).  The statute removes jurisdiction of a court to consider the denial of an alien's request for voluntary departure.  Because this Court cannot review any decision which may have been made[9] concerning Petitioner's request to avoid removal detention and leave the United States voluntarily, this case should be dismissed.

In addition, "[v]oluntary departure is available only to aliens who are not deportable on security grounds and who have not been convicted of an aggravated felony."  Blanc, 996 F.3d 1274, 1278 (citing 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26).  Petitioner's crime of second degree murder is an "aggravated felony."  See Esquivel-Quintana v. Sessions, 137 S. Ct. 1562,

---

1283 (11th Cir. 2020) (en banc)).

[9] It is still unknown whether any decision has been made on Petitioner's request to have his passport returned and permit him to voluntarily return to India.

Case No. 4:21cv346-WS-MAF

1570, 198 L. Ed. 2d 22 (2017) (noting that "murder" and "rape" are "among the most heinous crimes" defined by the Immigration and Nationality Act as "aggravated felonies"). Even if this Court had jurisdiction to consider the merits of Petitioner's case, it does not appear that Petitioner is entitled to voluntarily depart the United States because of his criminal conviction for murder.

Accordingly, it is **ORDERED** that Petitioner's objections, ECF No. 8, be construed as a motion for reconsideration and be **GRANTED** to the extent that this case has been reviewed.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the "urgent petition for writ of habeas corpus and/or prohibition, ECF No. 1, be **DISMISSED** for lack of subject matter jurisdiction.

**IN CHAMBERS** at Tallahassee, Florida, on September 17, 2021.

 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.